TH:MWG/SMS/IC
F. #2024R00654

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

ERNEST AIELLO,
NELSON ALVAREZ,
      also known as "Spanish G,"
LOUIS APICELLA,
      also known as "Lou Ap,"
AMMAR AWAWDEH,
      also known as "Flapper Poker"
      and "Flappy,"
SAUL BECHER,
CHAUNCEY BILLUPS,
MATTHEW DADDINO,
      also known as "Matty" and
      "The Wrestler,"
ERIC EARNEST,
      also known as "Spook,"
LEE FAMA,
JOHN GALLO,
MARCO GARZON,
THOMAS GELARDO,
      also known as "Juice,"
JAMIE GILET,
TONY GOODSON,
      also known as "Black Tony,"
KENNY HAN,
SHANE HENNEN,
      also known as "Sugar,"
OSMAN HOTI
      also known as "Albanian Bruce"
      and "Big Bruce,"
HORATIO HU,
      also known as "H,"
ZHEN HU,
      also known as "Jonathan Chan,"
      Jonathan Hu," "Scruli" and
      "Stanley,"

**FILED**
4:11 pm, Oct 09, 2025
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

I N D I C T M E N T

Cr. No. 1:25-cr-00314-JMA-CHK
                                        
(T. 18, U.S.C., §§ 924(d)(1),
981(a)(1)(C), 982(a)(1), 982(b)(1), 1349,
1951(a), 1955(a), 1955(d), 1956(h), 2
and 3551 et seq.; T. 21, U.S.C., § 853(p);
T. 28, U.S.C., § 2461(c))

DAMON JONES,
     also known as "Dee Jones,"
JOSEPH LANNI,
JOHN MAZZOLA,
     also known as "John South,"
CURTIS MEEKS,
     also known as "Curt,"
NICHOLAS MINUCCI,
MICHAEL RENZULLI,
ANGELO RUGGIERO, JR.,
ANTHONY SHNAYDERMAN,
     also known as "Doc,"
ROBERT STROUD,
     also known as "Black Rob,"
SETH TRUSTMAN,
SOPHIA WEI,
     also known as "Pookie," and
JULIUS ZILIANI,
     also known as "Jay,"

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment unless otherwise indicated:

1.      Beginning in at least 2019, the defendants and their co-conspirators engaged in a complex fraud scheme to rig, or cheat at, illegal poker games in the Eastern District of New York and throughout the United States (the "Rigged Poker Scheme" or the "Scheme"). The defendants and their co-conspirators carried out the Rigged Poker Scheme by manipulating certain poker games at otherwise non-rigged, or "straight," illegal poker games, including weekly poker games occurring at locations on Washington Place (the "Washington Place Game") and Lexington Avenue (the "Lexington Avenue Game") in Manhattan, New York. The Washington Place Game and Lexington Avenue Game were "on record" with, and operated

with the express permission and approval of, members and associates of certain organized crime families of La Cosa Nostra, who provided support and protection for the games and collected owed debts from the games in exchange for a portion of the illegal gambling proceeds.

2. Victims of the Rigger Poker Scheme (the "Victims") believed they were participating in "straight" illegal poker games and that they were gambling against other participants on equal footing. In reality, however, the defendants and their co-conspirators, who constituted the remaining participants purportedly playing in the poker games, worked together on cheating teams (collectively, the "Cheating Teams") that used advanced wireless technologies to read the cards dealt in each poker hand and relay that information to the defendants and co-conspirators participating in the illegal poker games (collectively, the "Rigged Games"). The defendants and their co-conspirators then bet accordingly to ensure that the unsuspecting Victims lost money. Through the Rigged Poker Scheme, the defendants and their co-conspirators defrauded Victims of millions of dollars.

<u>THE DEFENDANTS</u>

3. The defendant ERNEST AIELLO was a resident of Wantagh, New York, and a member of the Bonanno Crime Family of La Cosa Nostra (the "Bonanno Crime Family").

4. The defendant NELSON ALVAREZ, also known as "Spanish G," was a resident of Uniondale, New York, and a member of the Cheating Teams.

5. The defendant LOUIS APICELLA, also known as "Lou Ap," was a resident of New Rochelle, New York, an associate of the Gambino Crime Family of La Cosa Nostra (the "Gambino Crime Family") and a member of the Cheating Teams.

6. The defendant AMMAR AWAWDEH, also known as "Flapper Poker" and "Flappy," was a resident of Brooklyn, New York, an associate of the Gambino Crime Family

3

and a member of the Cheating Teams.   AWAWDEH was an organizer of the Washington Place Game and, with others, organized Rigged Games at the Washington Place Game, among other places.

7.     The defendant SAUL BECHER was a resident of the Bronx, New York. BECHER was an organizer of the Lexington Avenue Game and, with others, organized Rigged Games at the Lexington Avenue Game, among other places.

8.     The defendant CHAUNCEY BILLUPS was a resident of Oregon and a member of the Cheating Teams.

9.     The defendant MATTHEW DADDINO, also known as "Matty" and "The Wrestler," was a resident of Franklin Square, New York, and was a member of the Genovese Crime Family of La Cosa Nostra (the "Genovese Crime Family").

10.     The defendant ERIC EARNEST, also known as "Spook," was a resident of Missouri and a member of the Cheating Teams.

11.     The defendant LEE FAMA was a resident of Brooklyn, New York, and a member of the Gambino Crime Family.

12.     The defendant JOHN GALLO was a resident of Brooklyn, New York, an associate of the Gambino Crime Family and a member of the Cheating Teams.   GALLO was an organizer of the Washington Place Game.

13.     The defendant MARCO GARZON was a resident of New Jersey and a member of the Cheating Teams.

14.     The defendant THOMAS GELARDO, also known as "Juice," was a resident of Scarsdale, New York, an associate of the Bonanno Crime Family and later an associate of the Genovese Crime Family.

4

15.     The defendant JAMIE GILET was a resident of Jericho, New York, and a member of the Cheating Teams.

16.     The defendant TONY GOODSON was a resident of Georgia. GOODSON worked with others to provide cheating technology to co-conspirators in the Scheme and was also a member of the Cheating Teams.   GOODSON participated in Rigged Games at the Lexington Avenue Game, among other places.

17.     The defendant KENNY HAN was a resident of Queens, New York, and a member of the Cheating Teams.   HAN participated in Rigged Games at the Lexington Avenue Game, among other places.

18.     The defendant SHANE HENNEN, also known as "Sugar," was a resident of Pennsylvania.   HENNEN organized Rigged Games, provided cheating technology to other co-conspirators in the Scheme to use in Rigged Games in exchange for a portion of the criminal proceeds from the Rigged Games, and was also a member of the Cheating Teams.

19.     The defendant OSMAN HOTI, also known as "Albanian Bruce" and "Big Bruce," was a resident of New Jersey and provided security at the Lexington Avenue Game.

20.     The defendant HORATIO HU, also known as "H," was a resident of Queens, New York, and a member of the Cheating Teams.

21.     The defendant ZHEN HU, also known as "Jonathan Chan," Jonathan Hu," "Scruli" and "Stanley," was a resident of Brooklyn, New York.   ZHEN HU was an organizer of the Lexington Avenue Game and, with others, organized Rigged Games at the Lexington Avenue Game, among other places.

22.     The defendant DAMON JONES, also known as "Dee Jones," was a resident of Texas and a member of the Cheating Teams.

5

23.     The defendant JOSEPH LANNI was a resident of Staten Island, New York, and a member and captain in the Gambino Crime Family.

24.     The defendant JOHN MAZZOLA, also known as "John South," was a resident of Georgia and a member of the Cheating Teams.

25.     The defendant CURTIS MEEKS, also known as "Curt," was a resident of Texas.  MEEKS worked with others to provide cheating technology to participants in the Scheme.

26.     The defendant NICHOLAS MINUCCI was a resident of East Northport, New York, an associate of the Gambino Crime Family and a member of the Cheating Teams.

27.     The defendant MICHAEL RENZULLI was a resident of Islip, New York, and a member of the Cheating Teams.

28.     The defendant ANGELO RUGGIERO, JR. was a resident of Howard Beach, New York, and was a member of the Gambino Crime Family.

29.     The defendant ANTHONY SHNAYDERMAN, also known as "Doc," was a resident of Brooklyn, New York.  SHNAYDERMAN laundered criminal proceeds from the Rigged Poker Scheme.

30.     The defendant ROBERT STROUD, also known as "Black Rob," was a resident of Kentucky.  STROUD organized Rigged Games, provided cheating technology to other participants in the Scheme to use in Rigged Games in exchange for a portion of the criminal proceeds, and was also a member of the Cheating Teams.

31.     The defendant SETH TRUSTMAN was a resident of Queens, New York, an associate of the Lucchese Crime Family of La Cosa Nostra and a member of the Cheating Teams.  TRUSTMAN was an organizer of the Lexington Avenue Game and, with others,

6

organized Rigged Games and illegal poker games at the Lexington Avenue Game, among other places.

32.     The defendant SOPHIA WEI, also known as "Pookie," was a resident of Queens, New York, and a member of the Cheating Teams.

33.     The defendant JULIUS ZILIANI, also known as "Jay," was a resident of New Jersey and a member of the Bonanno Crime Family.

THE RIGGED POKER SCHEME

34.     The defendants AMMAR AWAWDEH, ZHEN HU, ROBERT STROUD and SETH TRUSTMAN, together with others, organized and participated in Rigged Games, as well as "square" illegal poker games at various locations in New York City, including the Washington Place Game and the Lexington Avenue Game, and at other locations throughout the United States including East Hampton, New York.

35.     The defendants TONY GOODSON, SHANE HENNEN, CURTIS MEEKS and ROBERT STROUD, together with others, supplied other defendants and their co-conspirators in the Scheme with cheating technology.

36.     On numerous occasions, certain defendants and their co-conspirators invited the Victims, who were often wealthy, to Rigged Games.   To attract the Victims, in some instances, well-known former professional athletes participated in the Rigged Poker Scheme and were referred to as "Face Cards."   The Face Cards were members of the Cheating Teams and received a portion of the criminal proceeds in exchange for their participation in the Scheme. The defendants CHAUNCEY BILLUPS and DAMON JONES, both of whom are former professional basketball players, were Face Cards and members of the Cheating Teams.

7

37.     At the Rigged Games, the members of the Cheating Teams—including the defendants and their co-conspirators—used card shuffling machines that were purportedly randomly shuffling the playing cards to ensure fairness (the "Rigged Shuffling Machines"). However, the Rigged Shuffling Machines were secretly altered to use concealed technology to read the cards in the deck, predict which player at the table had the best poker hand, and relay that information via interstate wires to an off-site operator (the "Operator").   The Operator then communicated that information by cellular telephone to a member of the Cheating Team seated at the Rigged Game poker tables, referred to as the "Quarterback" or "Driver," who used secret signaling to share the information with the other members of the Cheating Teams playing in the Rigged Games.   The Cheating Teams used the information from the Quarterback to defraud the Victims, who believed they were playing "straight" illegal poker games.   At times, the defendants also utilized other cheating technologies such as electronic poker chip trays that could secretly read cards placed on the poker table; card analyzers that utilized technology loaded onto decoy cellular telephones that could surreptitiously detect which cards were on the table; and playing cards that had markers visible only to individuals wearing specially designed contact lenses or sunglasses.

38.     With respect to poker games held in the New York City area, members and associates of the Bonanno, Gambino and Genovese Crime Families, used threats and intimidation to assure payment of debts from the Rigged Games and the "square" illegal poker games organized by the defendants AMMAR AWAWDEH, ZHEN HU, ROBERT STROUD and SETH TRUSTMAN and their co-conspirators, as well as to "protect" the games from competition and other potential threats.   In exchange, members and associates of the Bonanno, Gambino and Genovese Crime Families received portions of the proceeds from the Rigged

8

Games and the "square" illegal poker games. The defendants ERNEST AIELLO, THOMAS GELARDO and JULIUS ZILIANI received proceeds on behalf of the Bonanno Crime Family. The defendants JOHN GALLO, LEE FAMA, JOSEPH LANNI and ANGELO RUGGIERO, JR., received proceeds on behalf of the Gambino Crime Family. The defendant MATTHEW DADDINO received proceeds on behalf of the Genovese Crime Family. In addition to receiving proceeds from the Rigged Games and "square" illegal poker games, certain members and associates of the Gambino Crime Family participated on Cheating Teams, including the defendants AMMAR AWAWDEH, LOUIS APICELLA, GALLO and NICHOLAS MINUCCI.

39.     To conceal the nature and extent of the Rigged Poker Scheme, as well as the proceeds from "square" illegal poker games, the defendants and their co-conspirators laundered their criminal proceeds through shell companies and third parties. The defendant ANTHONY SHNAYDERMAN and his associates and entities laundered the proceeds from the Rigged Games and the "square" illegal poker games for other defendants and their co-conspirators. In exchange for a fee, SHNAYDERMAN received payments from Victims of the Rigged Games and the "square" illegal poker games and provided cash or other forms of payment, such as cryptocurrency, to the defendants, including, among others, the defendants AMMAR AWAWDEH, ROBERT STROUD and SETH TRUSTMAN. The defendants also sent SHNAYDERMAN proceeds from the Rigged Games and "square" illegal poker games through wire transfers and other means, which SHNAYDERMAN, for a fee, converted to cash for the defendants.

40.     For example, in furtherance of the Rigged Poker Scheme, in or around April 2019, several of the defendants participated in Rigged Games in Las Vegas, Nevada, at which they defrauded Victims of at least $50,000. The defendants CHAUNCEY BILLUPS,

9

ERIC EARNEST, JAMIE GILET, ROBERT STROUD and SOPHIA WEI organized and participated in these Rigged Games using a Rigged Shuffling Machine supplied by STROUD.

41.     As another example, in or around June and July 2023, several of the defendants participated in Rigged Games at the Lexington Avenue Game, at which they defrauded John Doe #1, an individual whose identity is known to the Grand Jury, of approximately $1.8 million.   The defendants AMMAR AWAWDEH, JOHN GALLO, MARCO GARZON, KENNY HAN, ZHEN HU, JOHN MAZZOLA and SETH TRUSTMAN organized and participated in the games involving John Doe #1 using a Rigged Shuffling Machine supplied by the defendants TONY GOODSON and ROBERT STROUD.   The defendants ERNEST AIELLO, MATTHEW DADDINO, LEE FAMA, JOHN GALLO, THOMAS GELARDO and JULIUS ZILIANI received a portion of the criminal proceeds from the games involving John Doe #1 on behalf of the Bonanno, Gambino and Genovese Crime Families.   The defendant ANTHONY SHNAYDERMAN and his co-conspirators laundered at least $100,000 of the criminal proceeds from the games involving John Doe #1.

42.     As another example, in or about June 2023, several of the defendants participated in Rigged Games in East Hampton, New York, at which they defrauded John Doe #2 and John Doe #3, individuals whose identities are known to the Grand Jury, of at least $46,500 and $105,000, respectively.   The defendants LOUIS APICELLA, AMMAR AWAWDEH, JOHN GALLO, TONY GOODSON, KENNY HAN, OSMAN HOTI, HORATIO HU, JOHN MAZZOLA, NICHOLAS MINUCCI and ROBERT STROUD organized and participated in the Rigged Games involving John Doe #2 and John Doe #3 using a Rigged Shuffling Machine supplied by GOODSON and STROUD.   The defendant ANTHONY

10

SHNAYDERMAN and his co-conspirators laundered criminal proceeds from the Rigged Games involving John Doe #2 and John Doe #3.

43.     As another example, in or about September 2024, several of the defendants participated in Rigged Games in Miami, Florida, at which they defrauded John Doe #4, an individual whose identity is known to the Grand Jury, of at least $60,000.   The defendants NELSON ALVAREZ, JAMIE GILET, TONY GOODSON, KENNY HAN, JOHN MAZZOLA, MICHAEL RENZULLI and ROBERT STROUD organized and participated in the Rigged Games involving John Doe #4 using a Rigged Shuffling Machine supplied by GOODSON and STROUD.   The defendant ANTHONY SHNAYDERMAN laundered criminal proceeds from the Rigged Games involving John Doe #4.

44.     Overall, from approximately April 2019 through the present, the Rigged Poker Scheme caused losses to the Victims of at least $7,150,000.

45.     On several occasions, the defendants and their co-conspirators used threats of force and violence to secure the repayment of debts from illegal poker games.   Among other instances, in or about and between November 2022 and February 2023, the defendants THOMAS GELARDO, ZHEN HU and JULIUS ZILIANI conspired to and did extort John Doe #5, an individual whose identity is known to the Grand Jury, to secure the repayment of debt from illegal poker games.   Similarly, in or about and between September 2023 and October 2023, the defendants SAUL BECHER, ZHEN HU and SETH TRUSTMAN conspired to and did extort John Doe #6, an individual whose identity is known to the Grand Jury, to secure the repayment of debt from illegal poker games.

46.     In addition, on one occasion, several of the defendants conspired to steal a Rigged Shuffling Machine from John Doe #7, an individual whose identity is known to the

11

Grand Jury, who had previously supplied Rigged Shuffling Machines. Specifically, on or about September 7, 2023, the defendants AMMAR AWAWDEH, OSMAN HOTI, JOHN MAZZOLA, NICHOLAS MINUCCI and ROBERT STROUD conspired to commit and committed a gunpoint robbery of John Doe #7 to steal a specific model of Rigged Shuffling Machine from John Doe #7 that the defendants wanted to use in the illegal poker games.

COUNT ONE
(Wire Fraud Conspiracy)

47. The allegations contained in paragraphs one through 46 are realleged and incorporated as if fully set forth in this paragraph.

48. In or about and between April 2019 and the present, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ERNEST AIELLO, NELSON ALVAREZ, also known as "Spanish G," LOUIS APICELLA, also known as "Lou Ap," AMMAR AWAWDEH, also known as "Flapper Poker" and "Flappy," SAUL BECHER, CHAUNCEY BILLUPS, MATTHEW DADDINO, also known as "Matty" and "The Wrestler," ERIC EARNEST, also known as "Spook," LEE FAMA, JOHN GALLO, MARCO GARZON, THOMAS GELARDO, also known as "Juice," JAMIE GILET, TONY GOODSON, also known as "Black Tony," KENNY HAN, SHANE HENNEN, also known as "Sugar," HORATIO HU, also known as "H," ZHEN HU, also known as "Jonathan Chan," "Jonathan Hu," "Scruli" and "Stanley," DAMON JONES, also known as "Dee Jones," JOHN MAZZOLA, also known as "John South," CURTIS MEEKS, also known as "Curt," NICHOLAS MINUCCI, MICHAEL RENZULLI, ANGELO RUGGIERO, JR., ANTHONY SHNAYDERMAN, also known as "Doc," ROBERT STROUD, also known as "Black Rob," SETH TRUSTMAN, SOPHIA WEI, also known as "Pookie," and JULIUS ZILIANI, also known as "Jay," together with others, did knowingly and intentionally conspire to devise a

12

scheme and artifice to defraud the Victims, including John Doe #1, John Doe #2, John Doe #3 and John Doe #4, and to obtain money and property from the Victims by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

COUNT TWO
(Operation of an Illegal Gambling Business – Washington Place Game)

49.     The allegations contained in paragraphs one through 46 are realleged and incorporated as if fully set forth in this paragraph.

50.     In or about and between January 2021 and October 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants AMMAR AWAWDEH, also known as "Flapper Poker" and "Flappy," MATTHEW DADDINO, also known as "Matty" and "The Wrestler," LEE FAMA, JOHN GALLO, JOSEPH LANNI, NICHOLAS MINUCCI, MICHAEL RENZULLI and ANGELO RUGGIERO, JR., together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving illegal poker games located in and around Washington Place, New York, New York, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.05, and 20.00, and which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous

13

operation for one or more periods in excess of thirty days and had a gross revenue of at least $2,000 in one or more single days.

(Title 18, United States Code, Sections 1955(a), 2 and 3551 et seq.)

COUNT THREE
(Operation of an Illegal Gambling Business – Lexington Avenue Game)

51.     The allegations contained in paragraphs one through 46 are realleged and incorporated as if fully set forth in this paragraph.

52.     In or about and between January 2022 and October 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ERNEST AIELLO, SAUL BECHER, THOMAS GELARDO, also known as "Juice," TONY GOODSON, also known as "Black Tony," KENNY HAN, OSMAN HOTI, also known as "Albanian Bruce" and "Big Bruce," ZHEN HU, also known as "Jonathan Chan," "Jonathan Hu," "Scruli" and "Stanley," SETH TRUSTMAN and JULIUS ZILIANI, also known as "Jay," together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving illegal poker games located in and around Lexington Avenue, New York, New York, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.05, and 20.00, and which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for one or more periods in excess of thirty days and had a gross revenue of at least $2,000 in one or more single days.

(Title 18, United States Code, Sections 1955(a), 2 and 3551 et seq.)

14

## COUNT FOUR
### (Money Laundering Conspiracy)

53.     The allegations contained in paragraphs one through 46 are realleged and incorporated as if fully set forth in this paragraph.

54.     In or about and between April 2019 and the present, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NELSON ALVAREZ, also known as "Spanish G," LOUIS APICELLA, also known as "Lou Ap," AMMAR AWAWDEH, also known as "Flapper Poker" and "Flappy," SAUL BECHER, CHAUNCEY BILLUPS, MATTHEW DADDINO, also known as "Matty" and "The Wrestler," ERIC EARNEST, also known as "Spook," JOHN GALLO, MARCO GARZON, THOMAS GELARDO, also known as "Juice," JAMIE GILET, TONY GOODSON, also known as "Black Tony," KENNY HAN, SHANE HENNEN, also known as "Sugar," HORATIO HU, also known as "H," ZHEN HU, also known as "Jonathan Chan," "Jonathan Hu," "Scruli" and "Stanley," DAMON JONES, also known as "Dee Jones," JOHN MAZZOLA, also known as "John South," CURTIS MEEKS, also known as "Curt," NICHOLAS MINUCCI, MICHAEL RENZULLI, ANTHONY SHNAYDERMAN, also known as "Doc," ROBERT STROUD, also known as "Black Rob," SETH TRUSTMAN, SOPHIA WEI, also known as "Pookie," and JULIUS ZILIANI, also known as "Jay," together with others, did knowingly and intentionally conspire:

(a)     to conduct one or more financial transactions, to wit: transactions in and affecting interstate and foreign commerce and transactions involving the use of a financial institution that is engaged in, and the activities of which affect, interstate and foreign commerce, which transactions involved the proceeds of one or more specified unlawful activities, to wit: (i) wire fraud, in violation of Title 18, United States Code, Section 1343; and (ii) the operation of

15

illegal gambling businesses, in violation of Title 18, United States Code, Section 1955, knowing

that the property involved in the financial transactions represented the proceeds of some form of

unlawful activity, and knowing that the transactions were designed in whole and in part to

conceal and disguise the nature, location, source, ownership and control of the proceeds of the

specified unlawful activities, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i);

and

                (b)     to engage in one or more monetary transactions within the United

States in and affecting interstate and foreign commerce, by, through and to one or more financial

institutions, in criminally derived property of a value greater than $10,000 and derived from one

or more specified unlawful activities, to wit: (i) wire fraud, in violation of Title 18, United States

Code, Section 1343; and (ii) the operation of illegal gambling businesses, in violation of Title 18,

United States Code, Section 1955, contrary to Title 18, United States Code, Section 1957(a).

             (Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

COUNT FIVE
(Hobbs Act Extortion Conspiracy – John Doe #5)

        55.     The allegations contained in paragraphs one through 46 are realleged and

incorporated as if fully set forth in this paragraph.

        56.     In or about and between November 2022 and February 2023, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants THOMAS GELARDO, also known as "Juice," ZHEN HU, also known as "Jonathan

Chan," "Jonathan Hu," "Scruli" and "Stanley," and JULIUS ZILIANI, also known as "Jay"

together with others, did knowingly and intentionally conspire to obstruct, delay and affect

commerce, and the movement of articles and commodities in commerce, by extortion, in that the

defendants and others obtained property, to wit: United States currency, from John Doe #5 with

16

his consent, which consent was induced by wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

### COUNT SIX
(Hobbs Act Robbery Conspiracy – John Doe #7)

57.      The allegations contained in paragraphs one through 46 are realleged and incorporated as if fully set forth in this paragraph.

58.      On or about September 7, 2023, within the Eastern District of New York and elsewhere, the defendants AMMAR AWAWDEH, also known as "Flapper Poker" and "Flappy," OSMAN HOTI, also known as "Albanian Bruce" and "Big Bruce," JOHN MAZZOLA, also known as "John South," NICHOLAS MINUCCI and ROBERT STROUD, also known as "Black Rob," together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by robbery, to wit: the robbery of a Rigged Shuffling Machine from John Doe #7.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

### COUNT SEVEN
(Hobbs Act Extortion Conspiracy – John Doe #6)

59.      The allegations contained in paragraphs one through 46 are realleged and incorporated as if fully set forth in this paragraph.

60.      In or about and between September 2023 and October 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants SAUL BECHER, ZHEN HU, also known as "Jonathan Chan," "Jonathan Hu," "Scruli" and "Stanley," and SETH TRUSTMAN, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and

commodities in commerce, by extortion, in that the defendants and others obtained property, to wit: United States currency, from John Doe #6 with his consent, which consent was induced by wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNT ONE

61.     The United States hereby gives notice to the defendants charged in Count One that, upon their conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offense to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense.

62.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

     (a)  cannot be located upon the exercise of due diligence;

     (b)  has been transferred or sold to, or deposited with, a third party;

     (c)  has been placed beyond the jurisdiction of the court;

     (d)  has been substantially diminished in value; or

     (e)  has been commingled with other property which cannot be divided without difficulty;

18

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendants up to the value of the forfeitable property

described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code,

Section 853(p); Title 28, United States Code, Section 2461(c))

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS TWO AND THREE

63.     The United States hereby gives notice to the defendants charged in Counts

Two and Three that, upon their conviction of either of those offenses, the government will seek

forfeiture in accordance with: (a) Title 18, United States Code, Section 981(a)(1)(C) and Title

28, United States Code, Section 2461(c), which require any person convicted of such offenses to

forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or

indirectly as a result of such offenses; and (b) Title 18, United States Code, Section 1955(d),

which provides for the forfeiture of any property, including money, used in violation of Title 18,

United States Code, Section 1955.

64.     If any of the above-described forfeitable property, as a result of any act or

omission of the defendants:

| | | |
|---|---|---|
| (a) | cannot be located upon the exercise of due diligence; |
| (b) | has been transferred or sold to, or deposited with, a third party; |
| (c) | has been placed beyond the jurisdiction of the court; |
| (d) | has been substantially diminished in value; or |
| (e) | has been commingled with other property which cannot be divided |

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 981(a)(1)(C) and 1955(d); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNT FOUR

65.     The United States hereby gives notice to the defendants charged in Count Four that, upon their conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

66.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

Type text here

20

property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

> (Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS FIVE THROUGH SEVEN

67.    The United States hereby gives notice to the defendants charged in Counts Five through Seven that, upon their conviction of any of such offenses, the government will seek forfeiture in accordance with: (a) Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which requires any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses; and (b) Title 18, United States Code, Section 924(d)(1) and Title 28, United States Code, 2461(c), which require the forfeiture of any firearm or ammunition involved in or used in any violation of any other criminal law of the United States.

68.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

> (a)    cannot be located upon the exercise of due diligence;
>
> (b)    has been transferred or sold to, or deposited with, a third party;
>
> (c)    has been placed beyond the jurisdiction of the court;
>
> (d)    has been substantially diminished in value; or
>
> (e)    has been commingled with other property which cannot be divided

without difficulty;

Case 1:25-cr-00245-NRM Document 1 Filed 06/27/25 Page 22 of 39 D# 1584

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendants up to the value of the forfeitable property

described in this forfeiture allegation.

(Title 18, United States Code, Sections 924(d)(1) and 981(a)(1)(C); Title 21,

United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

FOREPERSON

By David Pitluck, Assistant U.S. Attorney

JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

22

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. 1:25-cr-00314-JMA-CHK |
| CURTIS MEEKS | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant* | | |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*   CURTIS MEEKS _____ ,

who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment    ☐ Superseding Indictment    ☐ Information    ☐ Superseding Information    ☐ Complaint

☐ Probation Violation Petition    ☐ Supervised Release Violation Petition    ☐ Violation Notice    ☐ Order of the Court

This offense is briefly described as follows:

Wire fraud conspiracy, 18 U.S.C. 1349
Money laundering conspiracy, 18 U.S.C. 1956(h)

Date:     10/09/2025

*Issuing officer's signature*

City and state:     Brooklyn, New York

August Marziliano
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* 10/21/2025 , and the person was arrested on *(date)* 10/23/2025 at *(city and state)* Georgetown, TX . |
| Date: 10/23/2025 |
| *Arresting officer's signature* |
| Special Agent   Clayton Etchison |
| *Printed name and title* |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

United States of America

v.

(1) Curtis Meeks

    *Defendant*

Criminal No.: **AU:25-M -01022(1)**

Date Appeared: October 24, 2025

Time:      Time: 11:59 - 12:26 p.m.
          (25  minutes)

# INITIAL APPEARANCE-  RULE 5/32.1

| 1. | District/Division Name and Case Number | ED/NY - Brooklyn, 1:25-cr-00314-JMA-CHK | Charging Instrument and Warrant Issued: | October 9, 2025 |
|---|---|---|---|---|
| | | | | *Date* |
| | Arrested | October 24, 2025 | Agency: | FBI |
| | | *Date* | | *Agency* |

2. COURT PERSONNEL:

| U.S. Magistrate Judge: | SUSAN HIGHTOWER |
| Courtroom Deputy: | Kyra Fink |
| Court Reporter: | FTR Gold - ERO |
| Interpreter: *If yes, Lorena Devlyn* | No |

3. APPEARANCES:

AUSA:
DEFT:

4. PROCEEDINGS:

| a. | | Age | Education | | Gender | Male |
|---|---|---|---|---|---|---|
| b. | X | Defendant understands proceedings and is mentally competent. | | | | Y |
| c. | X | Defendant is informed of constitutional rights. | | | | Y |
| d. | X | Defendant understands charges. | | | | Y |
| e. | X | Defendant informed of right to legal counsel. | | | | Y |

          1)    Defendant waives counsel.

          2)    Defendant states he/she will retain counsel.

    X    3)    **Defendant states he/she has retained Jorge Sanchez**
                Phone No.:

          4)    Defendant requests appointment of counsel.

                Defendant HAS NOT completed the CJA23 financial affidavit.

                    Court will appoint counsel in the interest of justice based on deft's verbal accounting of his current financial status.

                Defendant HAS completed the CJA23 financial affidavit and the Court will appoint counsel because:

                    The defendant is indigent at this time.

                    Even though the defendant is not indigent, counsel will be appointed in the interests of justice.

                The Court finds that the defendant is NOT eligible and denies request.

X  f.    Identity Hrg set for <u>Tuesday, October 28 at 2pm before Judge Susan Hightower</u>

5.       Other: _____

6.  a.    REMOVAL PROCEEDINGS - OUT OF DISTRICT:
           The Defendant is advised of Rule 20 and Rule 5 rights and ....
          _____ 1)    The Defendant waives Rule 5(c)(3)(D)(ii) and is detained pending removal to the
                    [Name of District]_____ . Detention hearing is to be held in that district.
          _____ 2)    The Defendant waives Rule 5 and is released on bond. The Defendant is ordered to appear in the
                    [Name of Court to Appear]_____ ☐ on _____ [Date]
                    or ☐ when notified by the prosecuting district.
            X    3)    The Defendant is ☐ detained ☒ released on bond and requests Rule 5(c)(3) hearing. The
                    Court sets hearing for _____Tuesday, Oct. 28, 2025 at 2pm_____

    b.    Other: _____

AO 199A (Rev. 06/19) Order Setting Conditions of Release

Page 1 of ___4___ Pages

# UNITED STATES DISTRICT COURT

for the

Western District of Texas

**FILED**

OCT 2 4 2025

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Curtis Meeks | ) | Case No. 25-mj-1022 |
| | ) | |
| *Defendant* | ) | |

## ORDER SETTING CONDITIONS OF RELEASE

IT IS ORDERED that the defendant's release is subject to these conditions:

(1)  The defendant must not violate federal, state, or local law while on release.

(2)  The defendant must cooperate in the collection of a DNA sample if it is authorized by 34 U.S.C. § 40702.

(3)  The defendant must advise the court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number.

(4)  The defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose.

The defendant must appear at:     U.S. Courthouse for the Eastern District of New York-Brooklyn Division
_____
*Place*

225 Cadman Plaza E, Brooklyn, NY 11201
_____

on _____ as directed. _____
*Date and Time*

If blank, defendant will be notified of next appearance.

(5)  The defendant must sign an Appearance Bond, if ordered.

AO 199B  (Rev. 10/20) Additional Conditions of Release

## ADDITIONAL CONDITIONS OF RELEASE

Pursuant to 18 U.S.C. § 3142(c)(1)(B), the court may impose the following least restrictive condition(s) only as necessary to reasonably assure the appearance of the person as required and the safety of any other person and the community.

IT IS FURTHER ORDERED that the defendant's release is subject to the conditions marked below:

( ☐ ) (6) The defendant is placed in the custody of:
Person or organization _____
Address *(only if above is an organization)* _____
City and state _____  Tel. No. _____
who agrees to (a) supervise the defendant, (b) use every effort to assure the defendant's appearance at all court proceedings, and (c) notify the court immediately if the defendant violates a condition of release or is no longer in the custodian's custody.

Signed: _____    _____
                                          *Custodian*                               *Date*

( ☑ ) (7) The defendant must:
( ☑ ) (a) submit to supervision by and report for supervision to the  U.S. Pretrial Services Office ,
         telephone number  512-916-5297 , no later than  as directed .
( ☑ ) (b) continue or actively seek employment.
( ☐ ) (c) continue or start an education program.
( ☑ ) (d) surrender any passport to:  U.S. Pretrial Services
( ☑ ) (e) not obtain a passport or other international travel document.
( ☑ ) (f) abide by the following restrictions on personal association, residence, or travel:  Travel restricted to Travis, Williamson, and Hays counties
         unless otherwise approved by the Court or U.S. Pretrial Services. Travel permitted to ED/NY for court purposes *~~may~~ Travel to San Antonio for employment*
( ☑ ) (g) avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, *and to fort Worth*
         including:  victims/witness/co-defendants named in the indictment *for fight on Nov. 8, 2025.*
( ☐ ) (h) get medical or psychiatric treatment: _____

( ☐ ) (i) return to custody each _____ at _____ o'clock after being released at _____ o'clock for employment, schooling,
         or the following purposes: _____

( ☐ ) (j) maintain residence at a halfway house or community corrections center, as the pretrial services office or supervising officer considers necessary.
( ☑ ) (k) not possess a firearm, destructive device, or other weapon.
( ☐ ) (l) not use alcohol ( ☐ ) at all ( ☐ ) excessively.
( ☑ ) (m) not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.
( ☐ ) (n) submit to testing for a prohibited substance if required by the pretrial services office or supervising officer. Testing may be used with random frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing. The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of prohibited substance screening or testing.
( ☐ ) (o) participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed by the pretrial services office or supervising officer.
( ☑ ) (p) participate in one of the following location restriction programs and comply with its requirements as directed.
         ( ☐ ) (i) **Curfew.** You are restricted to your residence every day ( ☐ ) from _____ to _____, or ( ☐ ) as directed by the pretrial services office or supervising officer; or
         ( ☑ ) (ii) **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities approved in advance by the pretrial services office or supervising officer; or
         ( ☐ ) (iii) **Home Incarceration.** You are restricted to 24-hour-a-day lock-down at your residence except for medical necessities and court appearances or other activities specifically approved by the court; or
         ( ☐ ) (iv) **Stand Alone Monitoring.** You have no residential curfew, home detention, or home incarceration restrictions. However, you must comply with the location or travel restrictions as imposed by the court.
         **Note:** Stand Alone Monitoring should be used in conjunction with global positioning system (GPS) technology.
( ☑ ) (q) submit to the following location monitoring technology and comply with its requirements as directed:

## ADDITIONAL CONDITIONS OF RELEASE

      (☑) (i)   Location monitoring technology as directed by the pretrial services or supervising officer; or
      (☐) (ii)  Voice Recognition; or
      (☐) (iii) Radio Frequency; or
      (☑) (iv) GPS.

(☑) (r)  pay all or part of the cost of location monitoring based upon your ability to pay as determined by the pretrial services or supervising officer.

(☑) (s)  report as soon as possible, to the pretrial services or supervising officer, every contact with law enforcement personnel, including arrests, questioning, or traffic stops.

(☐) (t)  pay all or part of the costs for referrals (treatment, drug testing, residential placement) based upon your ability to pay as directed by the pretrial services or supervising officer

AO 199C  (Rev. 09/08) Advice of Penalties                    Page __4__ of __4__ Pages

## ADVICE OF PENALTIES AND SANCTIONS

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.

While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year.  This sentence will be consecutive (*i.e.*, in addition to) to any other sentence you receive.

It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court.  The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed.  If you are convicted of:
(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;
(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – you will be fined not more than $250,000 or imprisoned for not more than five years, or both;
(3) any other felony – you will be fined not more than $250,000 or imprisoned not more than two years, or both;
(4) a misdemeanor – you will be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence you receive.  In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

### Acknowledgment of the Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release.  I promise to obey all conditions of release, to appear as directed, and surrender to serve any sentence imposed.  I am aware of the penalties and sanctions set forth above.

_____
*Defendant's Signature*

_____
*City and State*

### Directions to the United States Marshal

( ✓ ) The defendant is ORDERED released after processing.
( ☐ ) The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release.  If still in custody, the defendant must be produced before the appropriate judge at the time and place specified.

Date: ___10/24/2025___            _____
                                                    *Judicial Officer's Signature*

                                         U.S. Magistrate Judge Susan Hightower
                                                    *Printed name and title*

DISTRIBUTION:   COURT     DEFENDANT     PRETRIAL SERVICE     U.S. ATTORNEY     U.S. MARSHAL

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

United States of America

v.                                                    Case Number:  AU:25-M -01022(1)

(1) Curtis Meeks
    *Defendant*

Dear Sir or Madam:

TAKE NOTICE that the above-entitled case has been set before:

**UNITED STATES MAGISTRATE JUDGE SUSAN HIGHTOWER**,

at the **U.S. Courthouse, 501 West Fifth Street Austin, Texas Courtroom #6**, for the following:

**IDENTITY HEARING on October 28, 2025 at  2:00 PM**

EVERYONE to whom this notice is addressed (except those to whom copies are sent for information only) <u>must appear IN PERSON</u> unless excused from appearing by the Court.

ATTORNEYS are reminded that it is their duty to advise clients, witnesses, and others concerning rules of decorum to be observed in Court.  (Local Court Rule AT-5(b)(12)).

WHENEVER defendants or witnesses in a criminal case have need for the services of a court interpreter, the attorney must inform the U.S. District Clerk not later than five (5) business days before the scheduled Court proceeding.

***<u>If defendant chooses to waive hearing, a written waiver (see attached) must be signed by defendant and counsel and filed by 4:00 p.m. THE DAY BEFORE before scheduled hearing.</u>***

Date Issued:  October 24, 2025

(1) Curtis Meeks                              /s/
                                             _____
                                             Kyra Fink
                                             Magistrate Courtroom Deputy
Attorney at Law                              (512) 916-5896  Ext. 8705


cc:        U.S. Probation
           U.S. Pretrial Services
           U.S. Clerk
           U.S. Attorney

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| United States of America | § | |
| | § | |
| vs. | § | NO: AU:25-M -01022(1) |
| | § | |
| (1) Curtis Meeks | § | *Charging District's Case No.:* |
| | § | *1:25-cr-00314-JMA-CHK* |

### Waiver of Rule 5 & 5.1 Hearing
(Complaint/Information/Indictment)

I understand that I have been charged in another district, the Eastern District of NY - Brooklyn.

I have been informed of the charges and of my rights to:

(1)  retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2)  an identity hearing to determine whether I am the person named in the charges;

(3)  production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

(4)  a preliminary hearing to determine whether there is probable cause to believe that an offense has been committed, to be held within 14 days of my first appearance if I am in custody and 21 days otherwise, unless I have been indicted beforehand.

(5)  a hearing on any motion by the government for detention;

(6)  request transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my right(s) to:

(    )  an identity hearing and production of the warrant.

(    )  a preliminary hearing.

(    )   a detention hearing.

(    )  an identity hearing, production of the warrant, and any preliminary or detention hearing to which I may be entitled in this district. I request that any preliminary or detention hearing be held in the prosecuting district, at a time set by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

_____
(1) Curtis Meeks, *Defendant*

_____        _____
*Date*

*Counsel for Defendant*

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

**F I L E D**

**OCT 27 2025**

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | |
|---|---|
| United States of America | § |
| | § |
| vs. | § |
| | § |
| (1) Curtis Meeks | § |

NO: AU:25-M -01022(1)

*Charging District's Case No.:*
*1:25-cr-00314-JMA-CHK*

### Waiver of Rule 5 & 5.1 Hearing
(Complaint/Information/Indictment)

I understand that I have been charged in another district, the Eastern District of NY - Brooklyn.

I have been informed of the charges and of my rights to:

(1) retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2) an identity hearing to determine whether I am the person named in the charges;

(3) production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

(4) a preliminary hearing to determine whether there is probable cause to believe that an offense has been committed, to be held within 14 days of my first appearance if I am in custody and 21 days otherwise, unless I have been indicted beforehand.

(5) a hearing on any motion by the government for detention;

(6) request transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my right(s) to:

( ✓ ) an identity hearing and production of the warrant.

( ) a preliminary hearing.

( ) a detention hearing.

( ) an identity hearing, production of the warrant, and any preliminary or detention hearing to which I may be entitled in this district. I request that any preliminary or detention hearing be held in the prosecuting district, at a time set by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

_____
(1) Curtis Meeks, *Defendant*

_10 / 27 / 25_
Date

_____
*Counsel for Defendant*

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

# Bond Status Hearing

| | | | |
|---|---|---|---|
| United States of America | § | | |
| | § | | |
| vs. | § | NO: | AU:25-M -01022(1) |
| | § | | |
| (1) Curtis Meeks | § | | |

| | | | |
|---|---|---|---|
| JUDGE: | SUSAN HIGHTOWER | DATE: | October 27, 2025 |
| COURTROOM DEPUTY: | Kyra Fink | CSO: | John Hall |
| COURT REPORTER: | FTR Gold - ERO | PTO: | Alexis Garza |
| LAW CLERK: | | TIME: | 10:39 - 10:52 AM  (13 minutes) |

ATTORNEY(S) FOR USA:
Alan Buie, Grant Sparks

ATTORNEY(S) FOR DEFENDANT:
Jorge Sanchez

PROCEEDINGS:

Case called for bond status hearing. The Court reviewed certain aspects of bond conditions.
Hearing concluded.

AO 98 (Rev. 12/11) Appearance Bond

FILED

# UNITED STATES DISTRICT COURT
for the

OCT 27 2025

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ KF
DEPUTY CLERK

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No. 1.25-mJ-1022 |
| Curtis Meeks | ) |
| _____ | ) |
| Defendant | |

## APPEARANCE BOND

### Defendant's Agreement

I, __Curtis Meeks_____ *(defendant)*, agree to follow every order of this court, or any
court that considers this case, and I further agree that this bond may be forfeited if I fail:

( ✓ )  to appear for court proceedings;
( ✓ )  if convicted, to surrender to serve a sentence that the court may impose; or
( ✓ )  to comply with all conditions set forth in the Order Setting Conditions of Release.

### Type of Bond

( ) (1)  This is a personal recognizance bond.

( ) (2)  This is an unsecured bond of $ _____ .

( ✓ ) (3)  This is a secured bond of $ __250,000_____ , secured by:

( ) (a) $ _____ , in cash deposited with the court.

( ✓ ) (b) the agreement of the defendant and each surety to forfeit the following cash or other property
*(describe the cash or other property, including claims on it — such as a lien, mortgage, or loan — and attach proof of
ownership and value)*:
Lot 37, Block D, COUNTY LiNE SUBDiVISiON, PHASE III
Assessed Total $336,933 — $329,253
If this bond is secured by real property, documents to protect the secured interest may be filed of record.

( ) (c) a bail bond with a solvent surety *(attach a copy of the bail bond, or describe it and identify the surety)*:

### Forfeiture or Release of the Bond

*Forfeiture of the Bond.* This appearance bond may be forfeited if the defendant does not comply with the above
agreement. The court may immediately order the amount of the bond surrendered to the United States, including the
security for the bond, if the defendant does not comply with the agreement. At the request of the United States, the court
may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including
interest and costs.

AO 98 (Rev. 12/11) Appearance Bond

*Release of the Bond.* The court may order this appearance bond ended at any time. This bond will be satisfied and the security will be released when either: (1) the defendant is found not guilty on all charges, or (2) the defendant reports to serve a sentence.

### Declarations

*Ownership of the Property.* I, the defendant – and each surety – declare under penalty of perjury that:

(1)   all owners of the property securing this appearance bond are included on the bond;

(2)   the property is not subject to claims, except as described above; and

(3)   I will not sell the property, allow further claims to be made against it, or do anything to reduce its value while this appearance bond is in effect.

*Acceptance.* I, the defendant – and each surety – have read this appearance bond and have either read all the conditions of release set by the court or had them explained to me. I agree to this Appearance Bond.

I, the defendant – and each surety – declare under penalty of perjury that this information is true. (See 28 U.S.C. § 1746.)

Date: _____

_____
*Defendant's signature*

Esmeralda Colon-Zuniga
_____
*Surety/property owner – printed name*

_____ 10/27/2025
*Surety/property owner – signature and date*

Tiffanie Hervis
_____
*Surety/property owner – printed name*

_____
*Surety/property owner – signature and date*

_____
*Surety/property owner – printed name*

_____
*Surety/property owner – signature and date*

CLERK OF COURT

Date: 10/27/25

_____
*Signature of Clerk or Deputy Clerk*

Approved.

Date: 10/24/25

_____
*Judge's signature*







